May it please the court. Your Honor, my name is Jennifer Gilg. I'm here on behalf of the appellant, Mr. Jeffrey Russo. I work the Federal Public Defender's Office. In Johnson v. United States, I'm here to talk about the same residual clause that was written in the Armed Career Criminal Act was hopelessly vague and that when it is used to fix a sentence, it violates due process. That same residual clause, this time appearing in the career offender guideline, had the effect of increasing Jeffrey Russo's sentence by 100 months. At the time Mr. Russo was the career offender guideline fixed Mr. Russo's sentence. So Mr. Russo has filed a motion under 2255 asking the court to apply the rule in Johnson to grant him relief from his sentence. The district court denied that motion because it said that the court, the Supreme Court, has not yet applied Johnson in a mandatory guideline case. And the district court thinks that that step is that Mr. Russo needs to restart his statute of limitations. Why is that wrong? That is wrong on a couple of levels, Your Honor. First of all, the district court has misdefined the right in Johnson because the right that Mr. Russo asserts to relief has already been recognized. He doesn't need another newly recognized right to proceed on his claim. The right that he asserts is recognized in Johnson when Johnson said that a statute that has those two problematic features of indeterminacy in the way that a court defines the ordinary case of an offense and indeterminacy in the level of risk required to make that hypothetical offense sufficiently violent, when those features are present in a law that fixes a sentence, then it violates due process to apply that law. That's the rule in Johnson. Have other circuits dealt with the same question that you're posing to us today? They have, Your Honor. There's a little bit of a split, but the cases that support our position are cases which have allowed a successive petition to proceed because a person was sentenced under a mandatory guideline and their offense likely was deemed a crime of violence under the residual clause. So the First Circuit, for example, in Moore v. United States has allowed a claim to proceed in a mandatory guideline case. The Third Circuit in, I think, the case of Hefner, it's cited in my brief. There are a number of district court cases that have allowed this claim to proceed under the same construct of the rule that we recognize in Johnson, that the Supreme Court has recognized in Johnson. I would say not only have... How do you think we determine what the right is for purposes of 2255 F3? Because we were hearing the same argument from other parties before Beckles that Johnson supposedly decided the advisory guideline residual clause 2, and we said in that Donnell case, as you know, that no, that was reasonably debatable and therefore not the same right. Do you think that that's the right whether Johnson extends to the advisory guidelines or the mandatory guidelines, then it would require a new right, second new rule, or what's... I don't believe that's the correct standard. I think what you look to is the Teague doctrine. I mean 2255 F3 basically was an attempt to... Matter is a new rule because it's dictated by past precedent or not dictated by past precedent? Right, or if it breaks new ground. Yeah. So if you can... Well, isn't the standard there reasonably debatable? Isn't that the standard for Teague? I don't believe that's the standard for Teague. It's basically, is it a rule, a substantive rule that breaks new ground, or is it dictated by precedent? So... I know, but how do you decide whether it's dictated by precedent? Well, I think you look at the precedent. I mean, the precedent in this case would be Johnson, but also Welch. We have Beckles itself, which recognizes the right as we assert it, but just says that that right therefore does not apply to a provision that does not fix the sentence. I mean, Beckles is basically identifying the right as we did and then saying, but it does not apply to a provisional guideline. You can also look at Sessions versus DiMaia. All of those cases define the right consistently. The two problematic features, which contribute to vagueness and either the fact that the statute criminalizes an act or fixes a sentence, that combination creates unconstitutional vagueness. And because that's the combination that you have in a mandatory guideline case, that right has already been recognized. Well, I was just going to... The Fourth and the Sixth and the Tenth, I think, said that this issue is raised untimely. How do you critique their analysis? Well, Your Honor, obviously, I think the Fourth Circuit was actually an en banc... Well, they did ask for an en banc hearing and several of the judges wanted to hear that again. But I would go with the dissent in the Brown case in the Fourth Circuit because, again, I think the problem consistently in all of these cases that go against us is they're misdefining the right in Johnson. And they're narrowing it down so that only a case that is an ACCA case, where the prior offense was adjudicated under the residual clause, those are the only people entitled to relief. And Johnson, and particularly Welch and Beckles and DeMaia, don't support that conception of the rule. The rule has been defined much more broadly in those cases after Johnson. But I would argue even Johnson did not tether the right specifically to the ACCA. The reason that law was vague was not because it was in the ACCA. It was because it had those features that were problematic and that can't be applied in any statute that fixes a sentence. I'm going to reserve a couple of minutes for rebuttal. Thank you. Thank you, Ms. Guild. Mr. Molson? May it please the Court. I'm Assistant United States Attorney Matt Molson on behalf of the Justice Department. Mr. Russo in this case was sentenced to a drug distribution conspiracy, as well as a couple of 924C offenses. He was sentenced at a time prior to Booker, and his sentence was determined in part by the guidelines career offender section. After the Supreme Court decided Johnson, Mr. Russo filed a 2255 motion alleging that Johnson would invalidate the career offender finding in his case and should call for a new sentence. That raises an issue of is his 2255 motion timely? His 2255 motion was filed more than a decade after he was sentenced. In order for it to be timely, one of the exceptions would have to apply. Mr. Russo says it's timely because under 2255F3, there is a newly recognized right by the Supreme Court and that right has been made retroactive to apply to him. Why is that not correct? In his case, there's a couple reasons why that doesn't work. The first one is the Supreme Court has not recognized that right. Within the language of subsection F3. You agree with opposing counsel that it comes down to the characterization of the right? I believe it does, but I think we have to look to the Supreme Court precedent because the right has to be recognized by the Supreme Court. I think you look to their holdings. What have they held? I think it has to be firmly acknowledged by the Supreme Court. It can't be application of dicta to determine what might happen. You look to the case in Beckles. Justice Sotomayor said that whether or not Johnson might apply to the mandatory guidelines is an open question. She made that comment in her concurring opinion without any other comment from the other judges critiquing that finding or saying anything about that conclusion. You have the Supreme Court in Beckles saying that whether or not Johnson applies to the mandatory guidelines is an open question that has yet to be decided. Suppose that Johnson and Welch dictated a conclusion in another context within the meaning of Teague. Would that then be encompassed by the newly recognized right? I don't think we can reach that because you have Johnson which makes the finding that it applies to a statute. And as the reasoning in Beckles talked about, there's a distinction between application of Johnson to statutes versus to guidelines. I'm not sure you're really addressing the question. I understand there's an argument that there's a difference between the statute and the guidelines. My question is at a higher level of generality which is what legal standard do we use to decide whether the guideline rule is encompassed by the Johnson and Welch rule? And I was wondering whether you think that we should use the Teague dictated by prior precedent or some other standard. I think Teague is much broader than the statute. I think in this case we look to the statute. And the statute limitations under F3 says is that a right that's been recognized by the Supreme Court? And I think the language there indicates that it's been firmly acknowledged or clearly established by the Supreme Court. And I think that's much more... No, it doesn't say that. It says if the right has been newly recognized by the Supreme Court and made retroactive. So you're taking the position, the government's taking the position that if Johnson and Welch in some hypothetical situation dictated the same result in another situation, say there was another criminal statute, for example, that had the exact same residual clause. And you're saying even if Johnson and Welch dictated that same result, it would not be within the scope of the right that was recognized by the Supreme Court. It's got to be exactly an ACCA case to qualify under F3. I think that is true because if you look at some of the cases that are coming down, they're taking a look at it. They're not making a categorical statement that anything, that statutes that are vague in the manner that the residual clause was unconstitutional, they're applying on a case-by-case basis. And even in Johnson, they talked about how the ruling in Johnson does not undermine many of the criminal statutes that the government was worried that it might. And so I think what the Supreme Court is doing is taking a case-by-case basis. And so I think in order for, if you look at the language of F3, it talks about that the right has to be recognized by the Supreme Court. And what I think they mean by that, and I think what the case law talks about that, is firmly acknowledged, you know, something along those lines, more definite than what you might have under TIGI. So I think that the TIGI framework is different. I think the standard we look to here, and if I'm understanding the question correctly, I apologize if I'm not, but I think the framework we look to here is, has it been firmly established? And so if you look at, you know, in Johnson, they said that right, that the government's that this might invalidate a whole slew of criminal statutes is not accurate. And I think they're taking a case-by-case approach. And the fact that there is, within the case, a very clear argument as to whether or not the reasoning of Beckles would apply to... But why would the reasoning that was used by the Supreme Court in Johnson not apply to a mandatory a mandatory sentence? The reason is because it applied to a statute, and statutes are fundamentally different from guidelines. Well, not in function when it's mandatory. And if you look to, if you look to the reasoning in Beckles, for example, they talked about even, and some of the cases that we cited in the brief also talked about, that the case law has recognized that even mandatory guidelines are different than a impose a sentence above a mandatory guidelines. They may never impose a sentence above a statutory range. And so you look at the reasoning of Beckles, and they talk about a number of things that are unique to guidelines that don't apply to statutes. And they, one of the parts, one of the reasons they talked about is, prior to the guidelines, you had unfettered discretion, where Congress allowed them to sentence anywhere within the statutory range. And they said that there are no cases which question, which question that notion. And so, if you can have unfettered discretion within a statutory range, they said it's hard to see how you could have a vagueness challenge within that statutory range. And that reasoning applies not just to advisory guidelines, but also to mandatory guidelines. That reasoning does not apply to statutes like you do, like you have in the Armchair Criminal Act. And so I think that that's one of the differences. Another difference is Beckles talked about the fact that a contrary finding to what they found in Beckles would raise serious issues about whether or not the 3553A sentencing factors, which courts are required to consider, are themselves vague. And they were not ready to say that. In fact, they said that that would be a bad outcome. And see, the underlining reasoning here is that the amount of discretion given to judges within a statutory sentencing range is very different from a law which sets the statute, which prescribes conduct and establishes a statutory sentencing range. And so the reasoning for that reasoning in Johnson is quite different. The vagueness challenge there is quite different than what would be applied to a guidelines finding. And so when you have the Supreme Court in Beckles saying whether or not the rule applies to mandatory guidelines is an open question. I think that makes it very clear that it's not a right recognized by the Supreme Court. And if it's not a right recognized by the Supreme Court, then the district court was correct. And it's premature. And the statute of limitations would apply. You also have to look at this court's prior holding in Donnell where they made the distinction and said that the right recognized by Johnson applies to this statute. It does not apply to the guidelines. So I think when you look at those two cases, there's case law. But we said in Donnell that the reason why it didn't apply was that the issue was reasonably debatable and the answer wasn't dictated by Johnson. And even that would indicate that there's not a firmly established, the Supreme Court hasn't recognized the right. And if the Supreme Court hasn't recognized the right, then F-3 is not available to Mr. Russo and his 2250. Well, the reason I'm questioning you is you seem to keep saying that the Supreme Court has to specifically decide it. I'm just not sure why the government has to take such a stark position. There could be some case where Johnson and Welch dictates the answer in the next case where it's not reasonably debatable. It might be within the rule of F-3. Sure. But if your position here is that it's reasonably debatable whether Johnson extends to the mandatory guidelines, then you don't have to fight the Teague reasonable, debatable standard. And I think the Teague standard— You can argue however you want. I'm just kind of wondering. Why that would be objectionable. I think the Teague standard is different from the standard under F-3. And I think that the ruling in Johnson and Welch could apply if you had a residual clause under a statute which prescribed conduct and which fixed the statutory range. Under those circumstances, I think that you could say that the right recognized in Johnson does apply. But as this court and the Supreme Court have held prescribing conduct in statutory ranges or what statutes do, that's fundamentally different from what guidelines do. And so you do not have a firmly recognized right by the Supreme Court which would apply a vagueness challenge to the guidelines. And because of that, his claim was not timely. Thank you, Mr. Molson. Thank you. Ms. Gilg, your rebuttal. Thank you. I just want to address a few points that have come up in Mr. Molson's argument. First of all, in your decision in Hedberg v. United States, you yourself, the Eighth Circuit, equated 2255 F-3 standards with the Teague standards. It said that F-3 was meant to incorporate all of the case law under the Teague doctrine. That was the purpose of it. So for the government to now say that those analyses are separate does not comport with your own case law. Mr. Molson used the words firmly acknowledged or firmly established several times in terms of how the right has to appear. I think he's borrowing a standard from the clearly established case law, which has a different policy grounding. The reason that we look for really clearly established case law when we're reviewing decisions that are deciding a merits decision is because we want to give deference to a merits decision on an issue. There is no deference to be given here. This is a new question. So the clearly established case law doesn't apply. We have to look at Teague and whether or not- But if you look at Teague and you go back to Butler v. McKellar and the line of cases defining what a new rule is, don't they say it's whether the question is reasonably debatable or debatable among reasonable minds? You know, I have to confess that when I hear the words reasonably debatable, I think of the standard required for a certificate of appealability. I'll take your word for it that it may somewhere be in the Teague case law, but I have not read it. For a minute that that's in the Teague case law, why isn't it debatable among reasonable minds whether Johnson and Welch extend to the mandatory guidelines? I think because we know what the mandatory guidelines do, which is another place where I absolutely disagree with the government. Booker tells us what they do. Booker says there's no constitutional distinction between a statute and a mandatory guideline. We already have that and Beckles reinforced that. So if we have a provision that fixes a sentence, that's all we need for there's no debate. And Booker gives us the answer to that question. Ms. Gill, what do we do with your client's plea agreement wherein he waives the right to seek post-conviction relief in this case? I think you interpret it strictly. The waiver says he waives the right to challenge his conviction. He's not challenging his conviction here. He is challenging his sentence under the career offender guideline. So I would not hold his waiver against him. You wouldn't? No. If there are no more questions, I just ask that you reverse the district courts and allow Mr. Russo's petition to proceed to the merits decision. Thank you. Thank you, Ms. Gill. And thank you also, Mr. Molson, for your argument to the court this morning. It's a very interesting issue and certainly one right at the cutting edge of the development of sentencing law. And we thank you for helping us with it.